**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TRI-VALLEY CORPORATION, et al. | ) | Case No. 12-12291 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |
| | ) | |
| LUNA & GLUSHON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 12-50989 (MFW) |
| | ) | |
| TRI-VALLEY CORPORATION, | ) | |
| TRI-VALLEY OIL & GAS CO., | ) | |
| TVC OPUS I DRILLING PROGRAM, L.P., | ) | |
| SELECT RESOURCES CORPORATION, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**[1]

Before the Court is the Motion of Tri-Valley Corporation, Tri-Valley Oil & Gas Co., Select Resources Corporation, Inc., and TVC Opus I Drilling Program L.P. (collectively, the "Debtors"), to dismiss the Complaint filed by Luna & Glushon ("L&G"), for failure to state a claim for relief.  For the reasons set forth below, the Court will grant the Motion to Dismiss.

---

[1] The Court is not required to state findings of fact or conclusions of law pursuant to Rule 7052(a)(3) of the Federal Rules of Bankruptcy Procedure.  Accordingly, the facts recited herein are as averred in the Complaint, which must be presumed as true for the purposes of this Motion to Dismiss.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

I.  BACKGROUND

L&G is a law firm and partnership organized under California state law.  On February 4, 2005, the Debtors and L&G entered into an Attorney-Client Fee Contract (the "Fee Agreement") whereby L&G agreed to represent the Debtors in the possible acquisition of assets or beneficial interests from the Rudnick Estate Trusts. (Adv. D.I. 1 at Ex. A.)[2]  L&G continued to represent the Debtors from 2005 into 2012 in a series of litigation matters in which L&G defended the Debtors' interest in that property, including oil and gas leases.

On August 7, 2012, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Petition Date").  As of the Petition Date, the Debtors had received invoices from L&G for unpaid legal fees and costs and scheduled L&G as holding a disputed, unsecured nonpriority claim in the amount of approximately $5.8 million.

On November 16, 2012, L&G commenced the instant adversary proceeding seeking a declaratory judgment that, by virtue of an alleged charging lien, L&G holds a secured claim in the amount of $5,287,651.76 (plus postpetition interest of 10% per year) against all of the property of the Debtors' estates.  To support its alleged charging lien, L&G relies on paragraph 8 of the Fee

---

[2] Citations to pleadings in the bankruptcy case are "D.I. #" and to pleadings in the adversary proceeding are "Adv. D.I. #."

Agreement, which provides, in relevant part, "[Debtors] hereby grant [L&G] a lien on any and all claims or causes of action that are the subject of our representation under this agreement . . . . The lien will attach to any recovery [Debtors] may obtain, whether by arbitration award, judgment, settlement or otherwise." (Adv. D.I. 1 at Ex. A.)

On February 1, 2013, the Debtors filed a Motion to Dismiss the Complaint for failure to state a claim for relief in which they assert, inter alia, that the Fee Agreement did not create an enforceable charging lien because the language did not satisfy the Rules of Professional Conduct of the State of California, and that even if a charging lien was created, the lien would not extend to pre-existing oil and gas leases, real property interests, or other assets owned by the Debtors.  Briefing has been completed and the matter is ripe for decision.

II. <u>JURISDICTION</u>

This Court has core jurisdiction over this adversary proceeding.  28 U.S.C. §§ 1334 & 157(b)(2)(B).  The Court has the power to enter an order on a motion to dismiss even if the matter is non-core or the Court lacks authority to enter a final order. <u>See, e.g.</u>, <u>In re Trinsum Grp., Inc.</u>, 467 B.R. 734, 739 (Bankr. S.D.N.Y. 2012) ("After <u>Stern v. Marshall</u>, the ability of bankruptcy judges to enter interlocutory orders in . . .

3

proceedings has been reaffirmed . . . ."); Boyd v. Kind Par, LLC, Case No. 11-CV-1106, 2011 WL 5509873, at *2 (W.D. Mich. Nov. 10, 2011) ("[U]ncertainty regarding the bankruptcy court's ability to enter a final judgment . . . does not deprive the bankruptcy court of the power to entertain all pretrial proceedings, including summary judgment motions.").

III. DISCUSSION

    A.   Standard of Review

To survive a Rule 12(b)(6) motion, a claim must meet the standards of pleading. The Supreme Court's decisions in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), have shifted federal pleading standards from notice pleading to a heightened standard of pleading. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). This heightened pleading requirement applies to all civil suits in federal courts. Id.

To survive a motion to dismiss under the new pleading standard, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Id.  "[A] pleading offering only labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Fowler, 578 F.3d at 210 (quoting Twombly, 550 U.S. at 555).  "Courts have an obligation in matters before them to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable." Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 184 (3d Cir. 2000).  A court must "draw on the allegations of the complaint, but in a realistic, rather than a slavish, manner." Id.

Determining whether a complaint is "facially plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.  However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not shown — that the pleader is entitled to relief." Id.

Courts must conduct a two-part analysis. Fowler, 578 F.3d at 210.  "First, the factual and legal elements of a claim should be separated," with the reviewing court accepting "all of the complaint's well-pleaded facts as true, but . . . disregard[ing] any legal conclusions." Id. at 210-11.  Next, the reviewing court must "determine whether the facts alleged in the complaint

are sufficient to show that the plaintiff has a plausible claim for relief." Id.

    B.   Charging Lien

State law governs the nature, extent and validity of a lien in bankruptcy proceedings. Diamant v. Kasparian (In re S. Cal. Plastics, Inc.), 165 F.3d 1243, 1248 (9th Cir. 1999). The parties concede that California law governs the Fee Agreement because it was entered into in California. (Adv. D.I. 7 at ¶¶ 10-12.; Adv. D.I. 9.) See Kipperman v. Sunderland (In re Bush), 356 B.R. 28, 34 (Bankr. S.D. Cal. 2006).

Under California law, there are two different types of attorneys' liens: charging liens and possessory liens. Evans v. Stockton & Hing (In re Sw. Rest. Sys., Inc.), 607 F.2d 1243, 1246 (9th Cir. 1979). "A charging lien attaches to a specific fund or other property created or secured through the attorney's efforts." Lynberg & Watkins v. Seror (In re Alter), Adv. No. SV-05-01534-GM, 2006 WL 6810925, at *3 (B.A.P. 9th Cir. Aug. 15, 2006).

California law provides that liens may be created by contract of the parties or by operation of law. See Cal. Civ. Code § 2881 (West 2012). An attorney's charging lien to secure payment for legal services of significant value must be created by contract. Carroll v. Interstate Brands Corp., 121 Cal. Rptr. 2d 532, 536 (Cal. Ct. App. 2002) (citing Cetenko v. United Cal.

Bank, 179 Cal. Rptr. 902, 905 (Cal. 1982)).

Attorneys in California are required to enter into a written contract with the client setting forth "[a]ny basis of compensation, including, but not limited to, hourly rates, statutory fees or flat fees, other standard rates, fees, and charges applicable to the case" in any case in which it is foreseeable that the client's expenses will exceed $1,000.  Cal. Bus. & Prof. Code § 6148(a)(1) (West 2012).  Further, California lawyers must satisfy the ethical obligations found in Rule 3-300 of the Rules of Professional Conduct or any charging lien will be invalid.  See, e.g., Fletcher v. Davis, 90 P.3d 1216, 1221-22 (Cal. 2004) (holding that failure to comply with Rule 3-300 will invalidate an attorney's charging lien for hourly fees); Alter, 2006 WL 6810925, at *5 (holding that noncompliance with Rule 3-300 will render the charging lien for attorney fees unenforceable).

California Ethics Rule 3-300, entitled "Avoiding Interests Adverse to a Client," provides:

> A member shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, unless each of the following requirements has been satisfied:
>
> (A) The transaction or acquisition and its terms are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which should reasonably have been understood by the client; and

>    (B) The client is advised in writing that the client
>    may seek the advice of an independent lawyer of the
>    client's choice and is given a reasonable opportunity
>    to seek that advice; and
>
>    (C) The client thereafter consents in writing to the
>    terms of the transaction or the terms of the
>    acquisition.

Cal R. Prof. Conduct 3-300.

The Debtors assert that L&G did not properly plead in the Complaint that it complied with this requirement because it did not advise the Debtors in writing of their right to seek the advice of an independent lawyer, as required by California law. The Debtors argue that absent such written advice, L&G's alleged charging lien is invalid.  See, e.g., Alter, 2006 WL 6810925, at *5 (holding charging lien is invalid because the written and executed fee agreement at issue did not advise the client of her right to seek the advice of independent counsel); Segovia v. Bach Constr., Inc. (In re Segovia), Adv. No. 06-03180, 2008 WL 8462967, at *9-10 (B.A.P. 9th Cir. Oct. 22, 2008) (holding charging lien is invalid based on attorney's failure to comply with Rule 3-300).  Therefore, the Debtors argue that L&G fails to state a claim for relief because the charging lien is barred by Rule 3-300 of the Rules of Professional Conduct of the State Bar of California.

L&G responds that contrary to the Debtors' assertion, California courts have not required that claimants asserting attorney charging liens plead compliance with California Ethics

Rule 3-300 in the Complaint.  See, e.g., Clearstream Commc'n., Inc. v. Murray, No. CV S-0201598 GEB, 2003 WL 24309646, at *8 (E.D. Cal. Jan. 15, 2003) (denying motion to dismiss for failure to plead compliance with Rule 3-300 because "[p]laintiffs . . . failed to provide authority demonstrating that such compliance must be pled in the attorney's complaint against a former client").  Moreover, L&G asserts that California courts have only made determinations as to enforceability of attorney charging liens challenged under California Ethics Rule 3-300 after detailed factual findings determining that no written contract existed – on summary judgment or after trial.  See Alter, 2006 WL 6810925, at *1-3; Segovia, 2008 WL 8462967, at *1-3.

The Court disagrees.  In Fletcher, the Supreme Court of California sustained the defendants' demurrers[3] with respect to the attorney's complaint because the attorney did not allege compliance with California Ethics Rule 3-300.  90 P.3d at 1220-22.  The complaint in that case alleged that the defendants orally granted the attorney a charging lien for hourly attorney fees.  The Court opined that a charging lien based on hourly fees is an adverse interest within the meaning of Rule 3-300 and

---

[3] A demurrer is generally regarded as equivalent to, or in the nature of, a motion to dismiss, as a demurrer is a pleading that tests "the legal sufficiency of a complaint."  Donabedian v. Mercury Ins. Co., 11 Cal. Rptr. 3d 45, 64 (Cal. Ct. App. 2004); Delta Imps., Inc. v. Mun. Court, 194 Cal. Rptr. 685, 687 (Cal. Ct. App. 1983).

requires the client's informed written consent.  Id. at 1221.
The Court then concluded that the attorney did not plead
sufficient facts in the Complaint showing that he complied with
the rule and dismissed the complaint.  Id. at 1223.

Based on the decision in Fletcher, the Court concludes that under California law, attorneys must plead in their complaint that they complied with Rule 3-300 when seeking a declaratory judgment that they have a charging lien for hourly fees.  Here, L&G failed to do so.  The Complaint and the Fee Agreement are silent as to whether or not L&G advised the Debtors in writing of their right to seek the advice of an independent lawyer or whether the Debtors consented after a reasonable opportunity to seek such advise.  The Court will, therefore, grant the Debtors' Motion to Dismiss the Complaint.

    C.    Leave to Amend

Normally, when granting a motion to dismiss, leave will be freely granted to amend the complaint.  See, e.g., Shane v. Fauver, 213 F.3d 113, 115-16 (3d Cir. 2000) (holding that the court should generally grant leave to amend a complaint dismissed for failure to state a claim); Boileau v. Bethlehem Steel Corp., 730 F.2d 929, 938 (3d Cir. 1984) (noting that a presumption exists in favor of granting the moving party leave to amend); Burtch v. Henry Prod., Inc. (In re AE Liquidation, Inc.), Adv. No. 10-55478, 2012 WL 32589, at *2 (Bankr. D. Del. Jan. 6, 2012)

(holding that leave to amend should be freely given in the absence of undue delay, bad faith, undue prejudice, or futility).

In this case, the Court does not find bad faith, undue delay, prejudice, or futility.  The Court will, therefore, grant L&G 30 days to amend the Complaint.

IV. CONCLUSION

For the foregoing reasons, the Court will grant the Debtors' Motion to Dismiss.[4]

An appropriate Order is attached.

Dated: May 1, 2013               BY THE COURT:

*Mary F. Walrath*
Mary F. Walrath
United States Bankruptcy Judge

---

[4] Because L&G's secured claim fails to state a claim for relief, its related claim to recover postpetition interest pursuant to section 506(b) also must fail.  See United Sav. Ass'n. of Tex. v. Timbers of Inwood Forest Assoc., Ltd., 484 U.S. 365, 372-73 (1988).